UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.02 CR60029 -CR-HURLEY

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

ADDARRYLL DORSEY

               Defendant.   /
_____

### *REPORT AND RECOMMENDATION*

**THIS CAUSE** is before the court on specific order of reference from United States District Judge Daniel T.K. Hurley to conduct an evidentiary hearing and file a report and recommendation with respect to defendant's alleged violation of supervised release. An evidentiary hearing was held February 4, 27 and 28, 2008.

### THE PETITION

On January 6, 2011 a Petition was filed against the Defendant alleging:

1. Violation of Mandatory Condition, by failing to refrain from violation of the law. On or about December 30, 2010, in Duval County, Florida, the Defendant committed the offense of Aggravated Assault Domestic with a weapon, contrary to Florida Statute 784.021 (2).

2. Violation of Mandatory Condition, by failing to refrain from a violation of the law. On or about December 30, 2010, in Duval County, Florida, the defendant committed the offense of Battery/Domestic person/special weapon, no or minor injury, contrary to Florida Statute784.03.

3. Violation of Mandatory Condition, by failing to refrain from a violation of the law. On or about December 30, 2010 in Duval County, Florida, the defendant committed the offense of Possession of a firearm by convicted felon, contrary to Florida State Statute790.23(3).

4. Violation of Mandatory Condition, by failing to refrain from violation of the law. On or about December 30, 2010, in Duval County, Florida, the defendant committed the offense of Resisting Officer without violence, contrary to Florida State Statute 843.02.

5. Violation of Mandatory Condition, by failing to refrain from violation of law. On or about December 30, 2010, in Duval County, Florida, the defendant committed the offense of Loitering or Prowling contrary to Florida Statute 856.021 (1).

## FINDINGS OF FACT

Officer Jeremy Mason, Jacksonville Sheriff's Office, testified as to the events of December 30, 2010. The Court finds his testimony credible in all regards.

On that date, Ms. Raquhel Caldwell telephoned the Sheriff's office reporting that she had been assaulted by her fiancee and that he had a gun. Ms. Caldwell stated her address and gave a description of the Defendant as a black male wearing a green shirt and black pants. She related that she was calling from a neighbor's phone (Govt. Ex. 2). Officer Mason was dispatched to a residence located at 5707 Spellman Road, Jacksonville, Florida. Upon arrival, the Officer observed a Cadillac vehicle in the yard with a wheel bent under. He saw that Ms. Caldwell had a disfigured nose and had blood about the face. She was crying and upset. The victim related that her boyfriend had been drinking and that when he came home the two argued. She reported that when in their bedroom he beat her unconscious. The victim declined medical assistance and

declined to be photographed. The Officer observed blood on the bedroom floor.

Officer Mason then spoke to the victim's sister, Tewannah Prince, who was at the scene, as well as several of the children who resided in the home. Officer Mason related that Ms. Prince observed the Defendant in the residence with a gun and that her sister was on the floor of the bedroom unconscious. The Officer testified that the two younger children, ages 5 and 11, reported that they observed the Defendant with a gun and their mother on the floor.

While the Officer was conducting his investigation the Defendant kept calling Ms. Caldwell on the cell phone[1]. The Officer directed Ms. Caldwell to put the phone on speaker and to ask the Defendant where he was located. According to the credible testimony of Officer Mason, the male voice on the phone stated that he was a few blocks away and that he was "going to put a cap in her ass." In furtherance of his investigation, Mason completed a domestic violence checklist in which Ms. Caldwell described that the Defendant had previously engaged in domestic violence directed towards her and that it had gotten worse (Govt. Ex. 1)[2].

Meanwhile, other police officers located the defendant at approximately 4 am, wearing clothing as described in the 911 call, and lurking in the yard of a nearby residence. He refused to comply with orders to get on the ground. According to Mason, the Defendant struggled and had to be forced into submission and handcuffs. No firearm was located. According to Officer Mason, he observed that the Defendant had blood on his shirt when he was brought back to the residence.

---

[1] While the Officer testified that the calls came in on the victim's cell phone, the phone records (Def. Ex. 4) do not support that assertion. In contrast, Ms. Prince's oral sworn statement to the State Attorney's Office (Govt. Ex. 3) describes the Defendant calling in on the house phone while the Officer was conducting his investigation. In her sworn testimony to the State Attorney Ms. Prince reported that the Defendant threaten "to hurt" Ms. Caldwell.

[2] The police report was admitted without objection.

The Defendant was ultimately released on bond in Jacksonville, Florida. on state substantive charges with a condition of bond that he have no contact with the victim. In violation of that order, the Defendant and the victim married on January 5, 2011 (Def. Ex. 5).

At the hearing of April 27, 2011, Ms. Caldwell (now Mrs. Dorsey) was called as a defense witness. She began to testify in a manner inconsistent with her 911 telephone call and prior statements to the police at the scene. The Court appointed counsel for Ms. Dorsey and thereafter, on April 28, 2011, she invoked her Fifth Amendment protection and declined to further testify or be cross-examined. Thereafter, the Court struck the direct testimony of the witness. This Court does not rely upon any testimony given by Ms. Caldwell Dorsey.

The Defense introduced in evidence an affidavit of Tewannah Prince, sister of the victim, (Def. Ex.2) in which she completely recanted the sworn testimony that she had previously given to the State Attorney's office in Govt. Ex.3. In the defense affidavit, Ms. Prince now asserts that she did not see the Defendant with a gun the evening of December 30, 2010. The Court allowed the hearsay affidavit into evidence based upon the Defense assertion that the witness was in Jacksonville, Florida and unavailable to testify for the reason that she could not afford the expense of traveling to West Palm Beach for the hearing. In balancing the need for the hearsay evidence, the court concluded that the testimony of the witness was of pivotal importance to the defense for the reason that it related to the issue of whether or not the Defendant was in possession of a firearm as alleged.

U.S. Probation Officer Sutherland was called as a defense witness. He testified that on January 6, 2010, Ms. Caldwell Dorsey telephoned him claiming that she wanted to come in and show him she had no injuries. Sutherland reported that he did not observe any evidence of injuries on that date.

At the hearing of April 28, 2010, the Defendant testified. According to the Defendant, he and Ms. Caldwell were planning to marry around the Christmas holiday. On the night in question he went to a strip club with Ms. Caldwell's sister's husband. While there, his fiancee began texting and calling repeatedly. The text messages revealed that she was annoyed with him being at the strip club. The phone records (Def. Ex. 4) reveal that there was a series of non-stop calls from Ms. Caldwell to the Defendant between approximately 7pm and 9pm. Due to the noise in the club, the Defendant did not hear the messages or retrieve them until closer to midnight. Then he began calling her back multiple times. The Defendant's fiancee did not answer his calls. He then went to the residence and found she was not home with the children. He then left the residence for some 15 minutes and returned. Upon returning he saw the fiancee and her girlfriends out front. According to the defendant, she was intoxicated. He testified that he and his fiancee had some words in the bedroom during which time, her sister and nephew knocked on the bedroom door. He stated that Ms. Prince had a brick in her hand and that the nephew had a shiny object in his hand. According to the Defendant, his fiancee, her sister and the nephew went out front. After a few minutes, the Defendant went out front and observed his fiancee and her sister in a physical altercation. He testified that he broke up the altercation and left the residence. He denied hitting his fiancee or having a gun or being intoxicated. He denied calling the residence and threatening her as described by the police officer and Ms. Prince.

The Defendant testified that he was walking down the street at approximately 4:20 pm when the police came up on him and threw him to the ground. He denied being in the yard of another home or resisting arrest in any way. As for the damage to his Cadillac, the Defendant claims that Ms. Prince shattered the windows of his car. He denied driving the car up onto the yard of his home or damaging the wheel as described by the police officer. When released on

bond, the Defendant had the car towed in for repairs but insists that the car was drive able and had no damage to the wheel. The repair bill (Def. Ex.3) reflects $1720.50 in repairs to the vehicle and only approximately $500 was for glass repair or replacement. The rest of the repairs related to body labor and supplies. The Defendant asserted that his wife was lying on the 911 call and that he simply did not do any of the things alleged.

The Court finds the testimony of Addarryll Dorsey lacks credibility. Aside from the fact that the Defendant is a convicted felon, has a prior conviction for assault on a pregnant female and resisting arrest, and the fact that Defendant has himself admitted giving a false exculpatory[3], his testimony is inconsistent with the greater weight of the credible evidence in this case. The victim is heard on the 911 tape recorded call. She was agitated but coherent and did not sound intoxicated. She related her name, described what had occurred and that the Defendant had a gun. She provided the address of the incident correctly and explained that she was calling from her neighbor's house. She further described her assailant's clothing which was an accurate description. Upon arrival on scene, the officer observed injuries to the victim and his observations were corroborated by the interviews of three witnesses at the scene. There is no evidence in this record of any prior police contact between this Defendant and the Officers in question so as to arguably provide some motivation for the officers to falsify their reports or testimony (Def. Ex.6). The fact that the Defendant's cell phone records do not show a 4 am call from his cell phone to the victim's cell phone threatening the victim while the police were on scene does not mean that a call did not take place. On a holiday evening such as this, the Defendant could easily have used the cell phone of another individual on the street to call the

---

[3] See United States v. Dorsey, 2009 WL 348358 (S. D. Fla. 2009) (Addarryll Dorsey admitted in police interview that he gave a false exculpatory in his initial interview with police).

house phone, as opposed to the victim's cell phone. This makes sense since the Defendant knew that she was at home to pick up that phone. It is also significant is that the 911 caller describes using a phone from the neighbor's home. Why would the caller go to a neighbor's home to make the call rather than use her home phone? The logical answer is that she fled from the home at 4 am, out of fear of the armed Defendant who was inside the home at the time.

    In order to accept the Defendant's version of the facts, the Court would have to ignore the 911 call, Ms. Prince's sworn testimony to the State Attorney (Govt. Ex.3), and Officer Mason's testimony and report. The Court would have to believe that the several police officers involved in this incident made up the facts in the police report about speaking to two children at the residence who corroborated what the victim and her sister were saying at the time and that the officers falsified the loitering and resisting arrest charges. In examining the motivations for falsifying statements, there is no motive for the police officers to make up evidence in this case. This is a run of the mill domestic dispute and not some big headline grabbing case upon which careers are enhanced. There is no prior history of difficulties between these officers and the Defendant. On the other hand, there is every reason for the family of the Defendant and he himself to make false statements so as to avoid a jail sentence upon this second revocation of his supervision. It is crystal clear from this record that the victim, who is now the Defendant's wife, is attempting to testify to a scenario far different than what she reported on the 911 call. It is also clear that the sister of the victim, now the sister-in-law of this Defendant, has given a false statement under oath (Def. Ex.2) now disclaiming her prior sworn testimony (Govt. Ex.3.) in which she reported that the Defendant had a gun.

    Finally, there is the matter of the damaged wheel to the Cadillac. One inference is that the Defendant was angry with his fiancee for harassing him with texts and calls while he was out

at the strip club; that he had been drinking; and ran the car up over the curb into the yard as he came home to have words with his woman. The Officer observed such damage as soon as he arrived on the scene but the Defendant denied that the wheel to the car was damaged. Yet, it is illogical for the Defendant who is indigent and unemployed (Govt. Ex. 1) and his girlfriend, who reported to the police income under $15,000 per year (Gov. Ex. 1), to have felt the need to tow the Cadillac in to repair window glass broken out that evening unless the vehicle was not drive able.

Both Ms. Caldwell Dorsey, the victim, and her sister, Ms. Prince, have made themselves *unavailable* as witnesses in this case. Ms. Prince declined to travel to court to testify because of expense. Both Ms. Prince and Ms. Dorsey have made further testimony *unavailable* by virtue of having made dramatically inconsistent statements about the incident since the initial reports of December 30, 2010. Indeed, when counsel was appointed in the midst of Ms. Caldwell's testimony, she declined to further testify, as to do so would subject her to exposure either for filing a false police report in making the 911 telephone call or arguably giving false testimony in these proceedings. As for the Prince affidavit (Def. Ex.2), the exhibit was offered by defense counsel as admissible hearsay. This opened the door, however, to admission by the government of Ms. Prince's prior taped recorded oral statement(Govt. Ex 3) under oath which offered a diametrically opposite version of the incident.

## LEGAL ANALYSIS

In order to revoke supervised release the court must find by the preponderance of the evidence that the Defendant violated a condition of supervised release. See Johnson v United States, 529 U.S. 694,700, 120 S. Ct. 1795 (2000) (citing 18 U.S.C. Section 3583 (e)(3); United States v. Poellnitz, 372 F.3d 562, 566 (3rd Cir. 2004) (stating, "the plain language of Section 3583 (e) (3)

requires a finding by a 'preponderance of the evidence' that the defendant violated a condition of his supervised release"). All that is required is that the evidence reasonably satisfy the judge that the conduct of a probationer has not been as good as required by the conditions of probation. United States v. Robinson, 893 F.2d 1244, 1245 (11th Cir. 1990). The analysis of revocation proceedings relating to probation and supervised release are essentially the same. United States v. Morris, (11th Cir. 2005).

The Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S. Ct 1354 (2004) held that where the declarant is unavailable, testimonial hearsay is inadmissible unless the defendant has had a prior opportunity to cross examine the declarant . Crawford, 541 U.S. at 68. The question of applicability of Crawford to revocation proceedings is addressed in several unpublished Eleventh Circuit opinions. In United States v. Gaithers, 2008 WL 4682618 (11th Cir. 2008), this Circuit described Crawford as not having been interpreted to apply to supervised release revocation proceedings. *Accord* United States v. Zayas, 2005 WL 1953117, (11th Cir. 2005). In United States v. Morris, 140 Fed. Appx. 138 (11th Cir. 2005), a defendant appealed his revocation of probation proceeding and objected to the lower courts failure to make specific findings as to the reliabilty of hearsay statements and to expressly balance his right to cross- examine. The Eleventh Circuit referred to Crawford as inapplicable because Crawford dealt with an initial criminal proceeding, not a revocation of probation. This Court is of the view that a revocation of supervision is not part of a criminal prosecution so as to be within the Crawford 6th Amendment ambit. Without specifically defining what a "testimonial statement" is, Crawford held that 911 statements were not admissible in a trial because of the Confrontation Clause. Later, in Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266, the Supreme Court identified as "testimonial" statements made "when the circumstances objectively indicate that there is no ...ongoing emergency, and that the primary purpose... is to

establish and prove past events potentially relevant to later criminal prosecutions." *Id.* at 822.

In <u>United States v. Frazier,</u> 26 F.3d 110, 114 (11th Cir. 1994), the Eleventh Circuit held that the "Federal Rules of Evidence do not apply in supervised release revocation proceedings." The court then went on to state that hearsay is not automatically admissible and required the court to balance the defendant's right to confront an adverse witness against the grounds asserted by the proponent of the hearsay for denying confrontation. The court also stressed that the hearsay must be reliable. In light of <u>Frazier,</u> the undersigned will address the admission of the hearsay under permissible exceptions to the hearsay bar and the reliability. The undersigned will then and balance the Defendant's rights to confront adverse witnesses against him against the government's grounds for denying confrontation.

Since <u>Crawford,</u> courts have allowed 911 calls to be admitted at trial made during an ongoing emergency and for the purpose of obtaining police assistance. Such calls are considered non-testimonial and thus admission does not violate the Confrontation Clause. <u>See</u> <u>United States v. Chen Kuo</u>, 2011 WL 145471 (E.D.N.Y.) (citations omitted); <u>United States v. Harper</u>, 2009 WL 140125 (W.D.N.Y.). In these cases, like the case at bar, the declarant was speaking about events actually happening and made for the purpose of requiring police assistance as opposed to reporting long past events. In those cases, as here, declarant personally observed the events being reported. Thus, in such circumstances, the 911 calls become admissible under the excited utterance and/or present sense impression exceptions to the hearsay rules. <u>See</u> Fed. R. Evid. 803 (1) and (2). In addition, the 911 tape itself can be admitted as a public record or business record. <u>See</u> Fed. R. Evid 803 (8)(B) and (6). <u>See</u> <u>Lloyds v. Jones, et.al.</u>, 2009 WL 2970503 (E.D. Tex.), reh. den. 2007 WL 654350 (E.D. Tex. 2007) (Recordings or transcripts of 911 calls admissible as business record). In <u>United States v. Scott</u>, 2010 WL 4627876 (C.A. 11 (Ga.)), a CD containing 17,000 out of 1 million claims

processed by Medicare in the State of Georgia for one year was admitted over a hearsay objection as a business record even though it had been prepared for use at trial. The Eleventh Circuit declined to reach the issue of whether or not the excerpt of a business record prepared for use at trial fell within the Melendez-Diaz[4] Supreme Court clarification of what is "testimonial" and held that any Confrontation Clause error was harmless in the case.

Applying the law to the facts of this case, the Court finds the hearsay 911 tape recording to be reliable[5]. It was made by a person claiming to be Ms. Caldwell. She stated her address and that she was calling from a neighbors phone. The speaker was agitated and yet coherent. She was not slurring her speech and her sentence construction was appropriate. She described her assailant in detail as black male wearing a green shirt and further stated he was her fiancee. The 911 tape is truly an excited utterance and as such falls within a firmly rooted hearsay exception. It was made based upon the declarant's observations and to obtain police assistance. The Second and Eighth Circuits have held that excited utterance statements are admissible in supervised release proceedings. In United States v. Aspinall, 389 F.3d 332 (2nd Cir. 2004), *abrogated on other grounds as recognized by* United States v. Fleming, 397 F.3d 95, recognized that excited utterance is admissible without need for applying balancing test where statement falls within a recognized hearsay exception. In United States v. Jones, 299 F. 3d 103 (2nd Cir. 2002), the court noted that "a statement's reliability can be inferred without more in a case where the evidence falls with a firmly

---

[4] Melendez-Diaz v. Massachusetts,129 S.C. 2527, 2531-32, 174 L. Ed.2d 314, 77 USLW 4574 (2009) (forensic and laboratory reports prepared for use during litigation held testimonial in nature).

[5] Defendant did not object to the admission of the 911 call herein on the basis that there was no records custodian called to testify. The prosecutor in this revocation of supervision proceeding proffered without objection that she received the tape in an email transmission from the police officer who had previously testified in this case. See United States v. Lezcano, 2008 WL 4605918 (C.A. 11 (Fla.)) (holding failure to call records custodian when admitting business records did not violate Crawford).

rooted hearsay exception." Id at 344. Likewise, the Prince statement under oath to the State Attorney investigator (Govt. Ex.3) is admissible to rebut her own contrary affidavit (Def. Ex. 2) stating the Defendant did not have a gun. Thus, the recorded sworn testimony of Ms. Prince (Govt. Ex.2)is permissible impeachment evidence as opposed to being admitted for the truth of the matter asserted therein. Fed. R. Evid 806. What comes out of these two pieces of evidence is an admissible hearsay declaration of the facts of the assault that took place: a gun was involved and the assailant was described as her fiancee, the Defendant. The Court finds that this 911 recording is not testimonial in nature. Further, it is admissible under hearsay exceptions and because Crawford is inapplicable to revocation proceedings.

When applying the Frazier balancing test, it is clear that it is the Defendant's influence upon Ms. Caldwell Dorsey that has led to his inability ability to cross- examine her. He cannot be allowed to benefit from that coercive influence and be heard to complain that he was denied the right to cross examine the witness when the government is forced to rely upon the statements made in the 911 tape. Moreover, had Ms. Caldwell Dorsey decided to continue with her testimony, the 911 tape would have been admissible as impeachment evidence. In that regard, the Defendant has himself testified to his version of the events thereby putting before the Court the favorable testimony that he would have hoped would have come through his wife's testimony had she not invoked her Fifth Amendment protections. As part of this balancing analysis, the Court has also considered the police testimony and police report, which reflect that the child witnesses in the house at the time of the event were questioned separately and each confirmed that the Defendant, the father of one of the children, had been the attacker and that he had a gun, corroborating the reliabilty of the hearsay statements.

Finally, the Defendant himself is no stranger to witnesses becoming unavailable and

changing their testimony. In 2008, the Defendant was arrested for his first violation of supervision. Arrested also was Mr. Hall, a co-conspirator, who had participated in the attempt to obtain oxycodone. At that time of his arrest, Hall implicated Dorsey. At trial, Hall changed his story and Dorsey was acquitted. A second conspirator who had implicated Dorsey had fled and was unavailable as a trial witness. At Dorsey's supervised release revocation proceeding the earlier taped statements of the now recalcitrant or unavailable witnesses were admitted. The court reasoned that it was unlikely that a person would make a false admission against interest (confessing to a crime), thereby making the entire statement reliable so as to escape the hearsay bar. Fed.R Evid 804 (b)(3). There, as in this instance, the prior statements were made at or near the time of the incident, were corroborative of each other, and the crime at hand was similar to conduct previously engaged in by the Defendant.

One last legal issue remains and that is the sufficiency of the evidence as to violation number 3. Specifically, the sufficiency of the evidence that the weapon used was a firearm as defined under Florida law. In Florida, "[t]he possession or use of a firearm can be established by circumstantial evidence." Margiotti v. State, 844 So. 2d 829, 831 (Fla. Dist. Ct. App. 3d Dist.), rev. den., 888 So. 2d 622 (2004). Moreover, "[b]ecause the definition of 'firearm' [in Section 790.001(6)] does not involve proof that the gun is loaded or operable, a defendant's use of a firearm during a crime can be established even if the gun is not recovered and introduced into evidence." Mitchell v. State, 698 So. 2d 555, 558 (Fla. Dist. Ct. App. 2d Dist.), rev. den., 703 So. 2d 1062 (1997); See also Flowers v. State, 738 So. 2d 412, 413 (Fla. Dist. Ct. App. 5th Dist. 1999) (finding sufficient evidence to conclude that defendant possessed a firearm during a robbery, even absent introduction of the weapon into evidence). Eyewitness testimony can thus constitute sufficient evidence of a defendant's possession of a firearm. See Akins v. State, 838 So. 2d 637, 639 (Fla. Dist. Ct. App. 5th

Dist. 2003) (victim's testimony that she thought she saw a shotgun, coupled with defendant's threat, supported finding that defendant possessed a firearm).

Here, in the original report of the incident, the victim, Defendant's fiancee, and her sister both indicated that Defendant brandished a handgun during the argument. On the 911 tape (Gov. Ex.2), the Defendant's wife related that he had a gun and her tone was one of fear and concern for her safety. The police interviewed the two children in the residence at or near the time of the incident and both stated that the Defendant had a gun. However, when Defendant was arrested an hour later, he was not in possession of a firearm. In spite of the fact that this weapon was never recovered, the eyewitness testimony in this case is sufficient to support a finding that Defendant possessed a firearm in violation of Fla. Stat. Section 790.23.

This Court finds by the preponderance of the evidence that the above findings of fact prove the charged violations of supervised release. Accordingly, this Court **RECOMMENDS** that the District court find the Defendant **GUILTY** of violating the terms of his supervised release.

Pursuant to 28 U.S.C. §636(b)(1)(B)and (C), the parties shall serve and file written objections, if any, with the Honorable Daniel T. K Hurley, United States District Court Judge within fourteen (14) days from the date of this report recommendation.

**DONE AND SUBMITTED** in Chambers at West Palm Beach, Florida, this 5th day of May, 2011.

> _____
> LINNEA R. JOHNSON
> UNITED STATES MAGISTRATE JUDGE

Copies provided to:

Honorable Daniel T.K. Hurley
Lynn Rosenthal, AUSA
Robert Stickney, Esq.
David Sutherland, USPO